IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CYNTHIA K. MILLER,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>      Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:14-cv-00558-DN-DBP<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

This case was referred to the court under 28 U.S.C. 636(b)(1)(B). (Dkt. 8.) Currently pending before the court is Plaintiff Cynthia K. Miller's ("Plaintiff") appeal of the Commissioner of Social Security's decision denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401–33 *and* 1381–85. Having considered the parties' briefs, the administrative record, and the relevant law, this court **RECOMMENDS** that the district court **REMAND** the Commissioner's decision for further consideration.

## I.    PROCEDURAL HISTORY

Plaintiff's application for benefits was denied initially on November 1, 2007, and upon reconsideration on April 10, 2008. (Tr. 208, 211.) Plaintiff then sought a hearing before an ALJ, which took place on July 21, 2009. (Tr. 216.) ALJ Martinez conducted that hearing and on October 8, 2009, he issued a decision finding Plaintiff not disabled. (Tr. 225.) The Appeals Council remanded the case on January 20, 2011, because ALJ Martinez had not adequately determined Plaintiff's mental Residual Functioning Capacity ("RFC") and did not properly

evaluate non-treating source opinions. (Tr. 227–29.) ALJ Martinez then held a second hearing on August 24, 2011, and issued a second opinion on August 26, 2011, again finding Plaintiff was not disabled. (Tr. 233–49.) On January 21, 2012, the Appeals Council again remanded the case, this time to ALJ Switzer. (Tr. 257–60.) The Appeals Council found several deficiencies and provided specific instruction on remand. (*See id.*) On January 7, 2013, ALJ Switzer issued her opinion finding Plaintiff not disabled. (Tr. 22– 50.) The Appeals Council denied Plaintiff's request for review on June 10, 2014, making ALJ Switzer's decision, the final decision of the Commissioner. (Tr. 4.)

## II. STATEMENT OF RELEVANT LAW

### A. Definition of Disability Under the Act

The Act states that an individual is disabled "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Id.*; *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

### B. Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1) engaged in substantial gainful activity during the alleged disability period, (2) had a severe impairment, (3) had a condition that met or medically equaled the severity of a listed impairment, (4) could return to his past relevant work, and if not (5) could perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's

disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. *Id*.

### C. Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the evidence as a whole can support the agency's decision or an award of benefits, the court must affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

### III. THE ALJ'S DECISION

At step one, ALJ Switzer found that Plaintiff has not been engaged in substantial gainful activity since the alleged onset date, August 4, 2006. (Tr. 26.) At step two, the ALJ found that Plaintiff suffered from four severe impairments: degenerative disc disease, anxiety disorders, personality disorder, and substance abuse. (*Id.*) At step three, the ALJ found that claimant did not meet any listed impairment. (Tr. 29.) At step four, the ALJ found that claimant was capable of performing her past relevant work as a plastic mold processor. (Tr. 48.) The ALJ continued to step five and found that, alternatively, Plaintiff could make an adjustment to perform jobs that exist in significant numbers in the national economy. (*Id.*)

### IV. DISCUSSION

Plaintiff raises four alleged errors on appeal. First, Plaintiff alleges that the ALJ failed to allow cross-examination of Dr. Devere, Dr. Enright, and Vocational Expert ("VE") John Hurst.

Second, Plaintiff argues that the ALJ failed to craft a valid non-exertional hypothetical to the VE. Third, Plaintiff argues that the ALJ failed to develop the record. Fourth, Plaintiff asserts the ALJ erroneously conducted credibility findings and failed to address certain lay-witness testimony. The court will examine these arguments in the order presented.

### a. Plaintiff was afforded adequate opportunity for cross-examination

Plaintiff has not demonstrated that the ALJ erred when she cut short Plaintiff's cross-examinations of Drs. Devere and Enright, or the Vocational Expert ("VE"), John Hurst. Plaintiff asserts that she was entitled to "ask the witnesses any questions material to the issues." (Pl.'s Br. at 13 (citing 20 C.F.R. 404.950(e)).) Plaintiff cites *Richardson v. Perales* as establishing "the right to cross-examination pertains to a S[ocial ]S[ecurity] hearing." (Pl.'s Br. at 13 (citing 404 U.S. 389 (1971)).) Plaintiff also cites internal administrative rules regarding cross-examination of medical and vocational experts. (*Id.* (citing HALLEX I-2-6-70 *and* I-2-6-74 (S.S.A)).)

First, Plaintiff's reliance on *Richardson* is somewhat misplaced. In that case, the Court held that a written medical report constituted substantial evidence that could be relied upon in an ALJ's decision, despite the report's hearsay character and lack of opportunity for cross-examination. *Richardson* at 402. *Richardson* adds little to the present discussion. Unlike *Richardson*, Dr. Devere, Dr. Enright, and John Hurst testified during the hearing. Also, Plaintiff was allowed to question these witnesses. Plaintiff's true contention is that her cross-examination was improperly cut short. This situation was not addressed in *Richardson*.

Next, the transcript of Plaintiff's counsel's examination of Dr. Devere demonstrates that the ALJ did not exceed his discretion in terminating Plaintiff's cross-examination of Dr. Devere. During Dr. Devere's cross-examination, Plaintiff's counsel asked about Exhibit 10F and Dr. Devere's role in the proceedings. (Tr. 65–66.) In response, the ALJ instructed Plaintiff's counsel

multiple times to ask "a substantive question." (Tr. 66–67.) Rather than alter his line of questioning, counsel persisted. Once again, the ALJ requested that Plaintiff's counsel tell Dr. Devere what counsel's "concerns about 10F are." Counsel responded, "Your Honor . . . do you want to direct my questioning?" (Tr. 67.) The ALJ answered affirmatively and counsel responded, "[w]ell, why don't you go ahead and take over . . . and ask him what I was going to ask on 10F." (*Id.*) The ALJ then asked Dr. Devere a question. (*Id.*) Counsel objected. (*Id.*) When the ALJ instructed counsel to submit any objections in writing after the hearing, counsel responded, "I[ a]m not going to do that." (*Id.*)

The ALJ's instruction to counsel to ask a "substantive" question appears to be an evidentiary ruling that counsel's line of question was not material. The ALJ has discretion to such an evidentiary ruling under the plain language of the regulations Plaintiff cites. *E.g.* 20 C.F.R. 404.950(e) (stating a claimant may "ask the witnesses any questions material to the issues"); HALLEX I-2-6-70 (S.S.A) (stating that a claimant's representative has the right to question a medical expert on any "pertinent matter"). When counsel refused to alter his line of questioning, the ALJ terminated the cross-examination. The very regulations Plaintiff cites appear to support the ALJ's decision to limit cross examination to "material" or "pertinent matter[s]." Plaintiff cites no authority that might otherwise show the ALJ exceeded her discretion in cutting off the line of questioning. Accordingly, Plaintiff has not established error here.

Moreover, the ALJ instructed counsel to submit in writing any objection to the ALJ's decision to terminate cross-examination. Counsel refused. To the extent the ALJ committed error, Plaintiff forfeited any challenge by refusing to comply with the ALJ's direction to submit a written objection. (*See* Tr. 24.) Had the ALJ sided with counsel regarding the objection, the ALJ could have held supplemental proceedings to allow further cross-examination.

Similarly, the ALJ found counsel's cross-examination of Dr. Enright unhelpful. (*See* Tr. 101–05.) Counsel was again invited to prepare a written submission regarding his concerns regarding Dr. Enright, but again he refused to do so. (*See* Tr. 98–99, 106.) When the ALJ asked counsel if he would like to move on from cross-examination of Dr. Enright to propose a hypothetical to VE Hurst, counsel responded, "no, I want to finish my questioning of a witness who is not answering my questions because he views himself as a tool of the Court to deny Ms. Miller benefits." (Tr. 105.) The hearing transcript demonstrates that Plaintiff was afforded the opportunity to cross-examine witnesses, but was disallowed from pursuing certain lines of questioning the ALJ found immaterial or in the ALJ's words not "substantive." The transcript also demonstrates that counsel refused to cross-examine Mr. Hurst when given the opportunity. Accordingly, Plaintiff has not identified any harmful error in the ALJ's conduct.

Finally, Plaintiff selectively quotes from a number of cases, many criminal or habeas corpus proceedings, to highlight the importance of cross-examination. These cases are only marginally helpful because, unlike the criminal setting, Social Security proceedings are non-adversarial. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Likewise, as addressed above, Plaintiff was afforded the opportunity for cross-examination. She was instructed to pose substantive questions. Cross-examination, even in criminal settings, is not unlimited. *E.g.* Fed. R. Evid. Plaintiff has not demonstrated that the ALJ's curtailment of cross-examination constituted legal error, undermined the fundamental fairness of the proceeding, or made the evidence so unreliable that it could not constitute the requisite substantial evidence.

  **b. The ALJ's non-exertional hypothetical to the VE was free of harmful error**

Plaintiff asserts that the hypothetical presented to the VE was too imprecise. Plaintiff cites *Decker v. Chater*, but does not offer any analysis of the allegedly deficient hypothetical, or

otherwise apply this case to *Decker*. 86 F.3d 953, 955 (10th Cir. 1996). The *Decker* court found no error with the ALJ's hypothetical in that case. The *Decker* court stated that a hypothetical given to a VE "need only reflect impairments and limitations that are borne out by the evidentiary record . . . ." *Id.* Plaintiff does not identify any impairments or limitations that were inappropriately omitted here. Accordingly, the court does not find any error under *Decker*.

Plaintiff's arguments appear to assume that ALJ Switzer was somehow bound by the prior ALJ's decisions that had been vacated by the Appeals Council. Plaintiff cites no authority to support this proposition. Further, it lacks logical appeal. ALJ Switzer was free, if not required, to make her own findings and conclusions based on the evidence in the record.

Also, Plaintiff discusses the conflicting evidence before the ALJ and appears to take issue with the ALJ's factual findings. For example, Plaintiff discusses her own testimony and argues that she testified to consistently having headaches as recently as 2006. (Pl.'s Br. at 19.) The ALJ, however, found that the "evidence renders the claimant's self-reports unpersuasive." (Tr. 39.) Plaintiff also suggests that the ALJ should have afforded greater weight to certain experts over others, but Plaintiff does not identify any legal error in the ALJ's decision to afford any particular weight to these expert opinions. Accordingly, Plaintiff's arguments invite the court to reweigh the evidence and substitute its judgment for that of the ALJ. The court is not in a position to do so. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

Additionally, while this topic ostensibly addresses the hypothetical presented to the VE, claimant also alleges error at step two. (Pl.'s Br. at 15.) Yet, any error at step two became harmless because the ALJ progressed past step two and considered Plaintiff's symptoms in subsequent steps. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

Plaintiff's remaining arguments on this point are dependent upon her arguments regarding cross-examination. (*E.g.* Pl.'s Br. at 18 (discussing cross-examination of Dr. Enright).) The court has previously concluded that the ALJ's conduct related to cross-examination did not constitute error. *See* Part IV.a, *supra*. Based on the foregoing, the court finds no error with the hypothetical presented to the VE.

### c. ALJ Switzer adequately developed the record

Plaintiff argues that the ALJ failed in her "affirmative duty to fully and fairly develop the record" because the ALJ did not order a consultative neurological examination. (Pl.'s Br. at 21 (quoting *Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989).) While the ALJ does have a duty to develop the record, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). "The difficult issue presented here, where the charge is that the ALJ has failed to develop the record by not obtaining a consultative examination, is to decide what quantum of evidence a claimant must establish of a disabling impairment . . . before the ALJ will be required to look further." *Id.* at 1166. However, "the Secretary has broad latitude in ordering consultative examinations." *Id.* "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Id.* at 1168. "The standard is one of reasonable good judgment." *Id.*

The *Hawkins* court found ambiguity where the medical record contained multiple abnormal EKG results and the plaintiff had been unable to complete treadmill tests due to high blood pressure. *Id.* at 1165–66. The plaintiff's medical records also contained notations that she may suffer from two specific heart conditions. *Id.* at 1169. The court found the ALJ should have

further investigated the plaintiff's heart condition, including ordering a consultative examination, based on these objective medical records. *See id.*

Here, the ALJ's duty to develop the record under *Hawkins* was not triggered. Plaintiff appears to suggest that the ALJ should have referred Plaintiff to a neurologist to evaluate her claim of migraines, but Plaintiff did not raise the requisite objective evidence to suggest this impairment exists.[1] Plaintiff apparently hopes to do so with a single record from 1992 that mentions Plaintiff suffered a migraine headache.[2] (Pl.'s Br. at 34 (citing Tr. 904–05).) Dr. Devere testified that the record did not establish that Plaintiff had migraines and this single incident did not change his opinion. (*See* Tr. 77–78.) The ALJ agreed with Dr. Devere that "the record does not contain objective medical evidence to support [Plaintiff's] allegations, particularly within the time period in question." (Tr. 27.) Plaintiff points to no objective evidence after 1992 that supports her claim of migraine headaches. Thus, unlike the *Hawkins* claimant, Plaintiff can point to no objective evidence of her alleged migraines near the time of her alleged disability onset that created an ambiguity the ALJ was compelled to resolve. Given the evidence before the ALJ, the court finds that she acted within her considerable discretion to not order a consultative examination to explore Plaintiff's purported migraines that were based on a single record that was over twenty years old.[3]

---

[1] Further, migraine headache is not a listed impairment. Instead, Plaintiff attempted to show that her migraines were equivalent of epilepsy. (Tr. 26, 29.)

[2] While certain other records demonstrate that Plaintiff suffered headaches, none of these records appear to address migraine headaches.

[3] Also, while Plaintiff initially faulted the ALJ for not addressing her headache calendar, she clarified in her reply that this material was only submitted to the Appeals Council, not the ALJ. (*Compare* Dkt. 24 *with* Dkt. 34.) As the headache calendar presents only additional subjective evidence of headaches, it does not change the court's conclusion regarding objective evidence.

Further, to the extent Plaintiff alleges an error at step two based upon missing evidence of headaches, any such error is harmless because the ALJ moved past step two and considered evidence of Plaintiff's headaches at subsequent steps. (*E.g.* Tr. 29, 34, 39, 45.); *see Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (noting that any step-two error "became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Thus, the ALJ did not fail to adequately develop the record here.

### d. The ALJ did not err in making credibility findings but failed to address the lay testimony of Cameron Larson.

Plaintiff argues that the ALJ erred by rejecting Plaintiff's own testimony. The ALJ reasoned, in part, that Plaintiff "smokes and sees a chiropractor regularly, suggesting some funds that could be used for medical care." (Tr. 37.) Plaintiff argues that there is no support in the record for this statement. As Defendant points out, the ALJ cited support for this proposition in the record. Dr. Richard Ingebretsen noted that Plaintiff "sees a chiropractor regularly." (Tr. 845.) He also noted that Plaintiff "continues to smoke . . . ." (*Id.*) Given these statements, the court finds that the ALJ's conclusion has support in the record. The ALJ inferred that these activities cost money. Plaintiff does not argue that such an inference is impermissible.

Plaintiff next argues that the ALJ made a number of other faulty credibility findings. (Dkt. 24 at 22.) Plaintiff does not attempt to show that the ALJ's findings are unsupported by substantial evidence. Instead, Plaintiff attempts to set forth evidence contrary to the ALJ's findings. Particularly in the realm of credibility determinations, the court's role is to determine whether substantial evidence supports the ALJ's decision, not reweigh the evidence. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *see also* (Def.'s Br. at 7–15 (discussing the

evidence supporting the ALJ's credibility determinations).) While Plaintiff may prefer the ALJ interpret the conflicting evidence differently, this court cannot reweigh that evidence.

1. Lay witness testimony

Finally, Plaintiff argues the case should be remanded because ALJ's failed to address lay witness Cameron Larson's testimony. (Pl.'s Br. at 25.) In *Blea v. Barnhart* an ALJ failed to address lay testimony from Plaintiff's wife that tended to corroborate the plaintiff's claims. 466 F.3d 903, 914–15 (10th Cir. 2006). The Tenth Circuit found that this failure required remand. *Id.* Likewise, here, the ALJ's decision does not address Mr. Larson's testimony.

Defendant argues that the "ALJ is not required to make specific written findings as to each lay witness' credibility, where the written decision reflects that the ALJ considered the testimony." (Def. Br. at 15.) This statement is true, but Defendant attempts to minimize the second half of it. *See Blea* at 915 ("[T]he ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'") (quoting *Adams v. Chater*, 93 F.3d 712 (10th Cir. 1996)). The court cannot find that the ALJ considered Mr. Larson's testimony because there is no mention of that testimony in the ALJ's decision. It is important to note that Mr. Larson provided his testimony before ALJ Martinez prior to the remand to ALJ Switzer. (Tr. 1050–51, 1076–80.) Thus, it is possible that ALJ Switzer is unaware of Mr. Larson's testimony.

Defendant also argues that any error here is harmless, but the court does not agree. Defendant next suggests that the ALJ will give little weight to Mr. Larson's testimony because Mr. Larson is biased to the same extent as other lay witnesses, Plaintiff's mother and sister.[4] (*Compare* Tr. 811–815 *and* 1070–76 *with* 1076–80.) However, Defendant can only speculate

---

[4] While Plaintiff addresses the credibility findings of these other lay witnesses in passing, the arguments are unsupported by authority and not persuasive.

about how the ALJ might treat this evidence because the ALJ did not mention it. The court will not presume to know how the ALJ might view the evidence. Additionally, unlike the other lay witnesses, Mr. Larson testified that he lived with Plaintiff prior to her alleged onset of disability date and continuing through the time of the hearing. (Tr. 1077.) This puts him in a unique position to observe Plaintiff's symptoms on a daily basis during the relevant time period. Also, *Blea* suggests that the failure to analyze lay testimony puts the ALJ's conclusions beyond meaningful review. "Where the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before h[er], the proper remedy is reversal and remand." *Blea* at 915 (quoting *Baker v. Bowen*, 886 F.2d 289 (10th Cir. 1989). The court is unable to undertake meaningful analysis of the ALJ's decision because this evidence was simply not addressed. Accordingly, the ALJ erred by not addressing Mr. Larson's testimony and this case must be remanded for further consideration.

## V.     RECOMMENDATION

Based on the forgoing, the court **RECOMMENDS** that the district court **REMAND** the Commissioner's decision for further consideration. Specifically, the ALJ must consider Mr. Larson's testimony at take any appropriate action to evaluate that testimony.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 2nd day of December, 2015.

_____
Dustin B. Pead
United States Magistrate Judge